UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDRE LEE COLEMAN,

    Plaintiff,

v.                                              Case No. 2:05-cv-30
                                                 HON. R. ALLAN EDGAR

ANDREW DAHLSTROM, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Andre Lee Coleman, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Corrections Officer Andrew Dahlstrom, Grievance Coordinator Denise Trierweiler and Hearing Officer Linda Maki, all of whom were employed at the Alger Maximum Correctional Facility (LMF) during the pertinent time period.

Plaintiff's complaint alleges that he was incarcerated at LMF at the time of the Defendants' alleged misconduct. Plaintiff states that on June 11, 2001, at approximately 4:05 p.m., Corrections Officer Scott Nadeau refused to give Plaintiff his dinner meal. Several hours later, Supervisor Brian Murray served a major misconduct report on Plaintiff for "threatening behavior." The misconduct ticket had been written by Officer Nadeau for behavior which allegedly occurred when dinner trays were being distributed. A few hours after Murray served the first misconduct report, he served a second report on Plaintiff for "insolence," which allegedly occurred at 4:30 p.m. and was written by Defendant Dahlstrom.

Plaintiff was interviewed on the misconduct on June 26, 2001, by Defendant Trierweiler. At this time Plaintiff requested the Birch Unit video surveillance tapes in order to show that Defendant Dahlstrom was not present on the wing at the time of the alleged "insolence" misconduct. However, Defendant Trierweiler decided that the requested evidence and the requested questions to Defendant Dahlstrom were not relevant. On June 27, 2001, Hearing Officer Sherman conducted a hearing on the "threatening behavior" charge, ultimately dismissing the charge due to deficiency of the notice. Sherman then heard the evidence on the "insolence" charge, and found Plaintiff guilty of the charge.

Plaintiff filed a request for rehearing, which was granted. On March 7, 2002, Plaintiff was contacted by Hearing Investigator Bruce Hobson and was served a notice of rehearing on the insolence charge. On March 15, 2002, Plaintiff appeared before Defendant Maki for the rehearing and was once again found guilty. However, no additional sanctions of punishment were imposed beyond the initial 30 days loss of privileges. On April 10, 2002, Plaintiff submitted a second request for rehearing, which was denied on June 13, 2002. On September 16, 2002, Plaintiff filed a petition for judicial review in the Ingham County Circuit Court as File No. 02-1400-AA. Following a series of motions, the major misconduct for insolence was reversed and vacated. As a result, any lost good time or other privileges were ordered restored. Prison officials filed a motion for reconsideration, which was denied by Circuit Court Judge Giddings on March 22, 2004.

Plaintiff's complaint asserts that Defendant Dahlstrom allowed himself to be encouraged to fabricate a misconduct by Officer Nadeau for the purpose of deliberately violating Plaintiff's procedural and substantive due process rights. Plaintiff further claims that Defendants Trierweiler and Maki knowingly conspired to deny Plaintiff's ability to produce rebuttal evidence in order to ensure that he was found guilty of the charged insolence misconduct. Plaintiff contends

that the fabricated misconduct was used to continue Plaintiff's administrative segregation status, in support of parole consideration, and to increase Plaintiff's security classification. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Presently before the Court is the Defendants Dahlstrom and Trierweiler's Motion for Summary Judgment (docket #17) and Defendant Maki's Motion for Summary Judgment (docket #32). Plaintiff has filed responses (docket #29 and #36) and Defendants Dahlstrom and Trierweiler have filed a reply to Plaintiff's response. The matter is now ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably

find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Maki claims that she is entitled to summary judgment in this case because her actions were quasi-judicial and she is thus entitled to absolute immunity. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Michigan Department of Corrections*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's claims against Defendant Maki stem from her performance as a hearings officer. Therefore, the undersigned concludes that Defendant Maki is absolutely immune from Plaintiff's claims in this case and is entitled to summary judgment.

Defendants claim that they are entitled to summary judgment on Plaintiff's procedural due process claims because he has not asserted that he was denied a liberty interest. As noted above, Plaintiff claims that he was falsely convicted of a major misconduct for "insolence." He also appears to claim that he was denied the ability to present evidence from a videotape taken at the time of the alleged incident. As noted above, Plaintiff's conviction was overturned by the state court, which ordered that the major misconduct citation be vacated and that any forfeited good time

or other privileges lost by Plaintiff be restored. In addition, the state court ordered that all departmental records concerning the misconduct conviction be expunged. (*See Coleman-Bey v. MDOC*, No. 02-1400-AA, Order Denying Motion to Affirm and Reversing Agency Action, dated June 19, 2003, attached as an exhibit to Plaintiff's complaint.)

Defendants claim that they are entitled to summary judgment on Plaintiff's procedural due process claims because placement in administrative segregation, an increased security classification and the denial of parole do not implicate due process protections. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Moreover, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Finally, there is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Nor does the Michigan system create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc). Therefore, if Plaintiff's procedural due process claims relied solely upon his placement in administrative segregation, an increased security classification, and the denial

of parole, Defendants would be entitled to summary judgment on Plaintiff's procedural due process claims.

However, the undersigned notes that because Plaintiff challenges the validity of a major misconduct ticket, his claim affects the length of his sentence.  Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction.  *See* MICH. COMP. LAWS § 800.33.  Good time credit results in a "systematic sentence reduction" from both the prisoner's minimum and maximum sentences.  *Id.*  A liberty interest is implicated where a prisoner suffers a loss of good time credits as a result of being found guilty of a misconduct charge. *Ford v. Harvey, et al.*, 106 Fed. Appx. 397, 399 (6th Cir. Aug. 6, 2004); *Sarmiento v. Hemingway*, 93 Fed. Appx. 65, 66 (6th Cir. Mar. 15, 2004).

Defendants claim that because any good time credits lost by Plaintiff were restored pursuant to the state court's order, he cannot show that a liberty interest was implicated.  However, the fact that Plaintiff successfully appealed the misconduct conviction and obtained restoration of the lost good time does not negate the fact that the initial loss of good time credits implicated a liberty interest.  Therefore, the undersigned concludes that the allegations set forth by Plaintiff in this case are sufficient to implicate a liberty interest as required to state a procedural due process claim.

Defendants further claim that Plaintiff received all the process due him because he was given an administrative hearing in which he was provided with notice of the charge and a written statement of the discipline imposed, as well as the reason for the finding.  The Due Process Clause gives a person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false.  The Due Process clause does not guarantee that the procedure will produce a correct decision.  "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and

even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). In this case, the state court found that, because the videotape had been destroyed by the time of the appeal, it was unable to determine whether the tape would have been relevant to Plaintiff's defense. Therefore, without the opportunity to present the videotape, Plaintiff was unable to convince an unbiased decisionmaker that the evidence against him was false. Consequently, the undersigned concludes that there is a genuine issue of material fact with regard to whether the refusal to allow Plaintiff to present the videotape of the incident denied him a fair hearing.

Defendants additionally assert that Plaintiff's procedural due process claims are barred by the *Parratt*[1] doctrine because Plaintiff "avers a random, unauthorized act and has not demonstrated the absence of adequate post deprivation remedies." (*See* Defendants Dahlstrom and Trierweiler's Reply to Plaintiff's Response in Opposition to their motion for summary judgment, docket #30.) However, the *Parratt* doctrine applies to the deprivation of "property," not liberty. *Parratt*, 451 U.S. at 537. For the reasons set forth above, the undersigned recommends that Defendants Dahlstrom and Trierweiler be denied summary judgment on Plaintiff's procedural due process claims.

Defendants further contend that they are entitled to summary judgment on Plaintiff's substantive due process claims. The undersigned notes that Defendants are correct in their assertion that the Substantive Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court."

---

[1] *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part* by *Daniels v. Williams*, 474 U.S. 327 (1986).

*Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205(1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff's allegations in this case fail to meet this formidable standard and, thus, he fails to state a claim that his substantive due process rights were violated.

Defendants contend that they are entitled to summary judgment on Plaintiff's conspiracy claims because he has failed to allege that the conspiracy was motivated by race or other class based animus as required by 42 U.S.C. § 1985. In order to state a claim of civil conspiracy under 42 U.S.C. § 1985, a plaintiff must establish (1) a conspiracy involving two or more persons, (2) for the purpose of depriving a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. A plaintiff must also show some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992). Plaintiff has not alleged such class-based invidiously discriminatory animus. Accordingly, Plaintiff's civil conspiracy claim pursuant to 42 U.S.C. § 1985 should be dismissed.

However, the undersigned notes that Plaintiff does not specify 42 U.S.C. § 1985 in his complaint. Rather, it appears that Plaintiff is asserting a generalized civil conspiracy. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single

plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. In this case, Plaintiff failed to allege any facts indicating that Defendants shared a single plan. In fact, Plaintiff merely alleges in his complaint that Defendant Trierweiler decided that the videotape evidence requested by Plaintiff was not relevant because there was no audio. Therefore, Plaintiff's claim of conspiracy is properly dismissed.

Finally, Defendants Dahlstrom and Trierweiler claim that they are entitled to qualified immunity because Plaintiff has failed to allege the "elements essential to the maintenance of the claims asserted." Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.

*Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

In this case, as noted above, Plaintiff's assertion that Defendants Dahlstrom and Trierweiler engaged in a conspiracy and violated his substantive due process rights fails to state a claim. Therefore, Defendants Dahlstrom and Trierweiler are entitled to qualified immunity with regard to these claims. However, the undersigned notes that there is a genuine issue of material fact with regard to whether Defendants Dahlstrom and Trierweiler violated Plaintiff's procedural due process rights by denying him a fair and unbiased hearing, thus implicating a recognized liberty interest. Such conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Ford v. Harvey*, 106 Fed. Appx. 397, 399 (6th Cir. Aug. 6, 2004); *Sarmiento v. Hemingway*, 93 Fed. Appx. 65, 66 (6th Cir. Mar. 15, 2004). Consequently, the undersigned finds that Defendants Dahlstrom and Trierweiler are not entitled to qualified immunity with regard to Plaintiff's procedural due process claims.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant Maki's motion for summary judgment. However, the undersigned finds that Plaintiff has sustained his burden of proof in response to Defendants Dahlstrom and Trierweiler's claim for summary judgment on his procedural due process claims, but has failed to sustain his burden of proof with regard to his substantive due process and conspiracy claims. Accordingly, it is recommended that Defendant Maki's Motion for Summary Judgment (docket #32) be granted, and that Defendants Dahlstrom and Trierweiler's Motion for Summary

Judgment (docket #17) be denied with regard to Plaintiff's procedural due process claims and granted with regard to his substantive due process and conspiracy claims.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 14, 2006